IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| GEORGE McDUFFIE,<br>    Plaintiff, | : | |
| | : | |
| v. | : | CIVIL ACTION NO. 21-CV-0161 |
| | : | |
| DORINA VARNER, *et al.*,<br>    Defendants. | : | |

**MEMORANDUM**

**GOLDBERG, J.**                                                                             June 1, 2021

Plaintiff George McDuffie, a prisoner currently incarcerated at SCI Chester, filed this civil action pursuant to 42 U.S.C. § 1983 based on allegations related to the loss of his property by officials at SCI Graterford, where he was previously incarcerated. He also seeks to proceed *in forma pauperis* and asks the Court to appoint counsel on his behalf. For the following reasons, the Court will grant McDuffie leave to proceed *in forma pauperis*, dismiss his Complaint for failure to state a claim, and deny his motion for counsel.

**I.    FACTUAL ALLEGATIONS**[1]

The Complaint names the following Defendants, all of whom are employees of the Pennsylvania Department of Corrections: (1) Dorina Varner, identified as Chief Grievance Officer; (2) Tammy Fergunson,[2] identified as Superintendent of SCI Graterford; (3) Lt. Stephens, identified as "the invesdtigative [sic] Officer assigned to handle [McDuffie's] grievance" at SCI Graterford; (4) Lt. Daring, identified a "lead Sergeant of the Assessment department" at SCI

---

[1] The allegations are taken from McDuffie's Complaint. (*See* ECF No. 2.)

[2] This appears to be a misspelling of Tammy Ferguson. However, the Court will adopt the spelling used in the Complaint.

1

Graterford; (5) Sgt. Curran, identified as "lead Property Room officer" at SCI Graterford; (6) John Doe #1, identified as a Correctional Officer at SCI Graterford; and (7) John Doe # 2, another Correctional Officer at SCI Graterford. (ECF No. 2 at 1-4.) The Defendants are sued in their individual and official capacities. (*Id*.)

McDuffie alleges that on February 4, 2018, he was transferred from SCI Pine Grove to SCI Graterford for a court appearance. (*Id.* at 4.) McDuffie informed Defendant Daring that two boxes of property sitting on the floor belonged to him, so Daring "directed an inmate worker to place [McDuffie's] boxes to the side and then informed [McDuffie] that he would get his boxes to the RHU[, where McDuffie would be housed,] on the next van." (*Id.*) An hour later, McDuffie was assigned to and placed in his cell, but he noticed that his property was missing. (*Id.*) Upon inquiry, he was informed that his property was not sent to the RHU. (*Id.* at 5.)

The next day, McDuffie informed prison staff that he needed his property because it contained legal work he required to prepare for court. (*Id.*) A Lieutenant who is not named as a Defendant told McDuffie that he would call Defendant Curran to locate the missing property. (*Id*.) However, Curran and the other officers "in assessment" reported that the property was "not there and should have been sent to the property room." (*Id.*) The Lieutenant followed up with Curran via email, but it is not clear whether he ever received a response. (*Id.*)

On or about February 8, 2018, Defendant Does #1 and #2 brought a box and one bag of property to McDuffie and asked him to sign for it. (*Id.*) Upon inspection, McDuffie realized that the property did not belong to him and informed the officers. (*Id.*) Doe #1 stated "well that's what was sent for you, so if you don't take that you won't be getting anythin [sic]." (*Id.*) Two days later, McDuffie filed a grievance about his lost property. (*Id.* at 5-6.) On or about March 16, he received a response from Defendant Stephens, who had been assigned to investigate the grievance.

(*Id.* at 6.)  Stephens reported that "due to officer's negligence, [McDuffie's] property was lost." (*Id.*)  Stephens also informed McDuffie that he could be reimbursed for certain items if he provided receipts but did not mention McDuffie's "legal files and research." (*Id.*)  McDuffie appealed to Defendant Fergunson seeking to be reimbursed for "[p]ictures of sentimental value, hygiene items, underclothes, and legal files that were lost by her officers." (*Id.*)  Ferguson responded that McDuffie would not be reimbursed unless he provided receipts documenting the purchases. (*Id.*)

McDuffie filed his final appeal to the Office of Inmate Grievance & Appeals seeking reimbursement for his lost property. (*Id.*)  He received a response from Defendant Varner stating that he would only receive $ 24.31 to compensate him for the lost property and "as [Varner] was able to obtain some documents pertaining to [McDuffie's] criminal case, he would not receive any reimbursement for his missing legal files." (*Id.* at 6-7.)

McDuffie claims he needed his legal files and research to "file criminal appeals and meet court deadlines" (*id.* at 10), and that his "ability to file appeals that could reduce his sentence" was affected, (*id.* at 11).  More specifically, he notes that the missing property "contained his criminal case file and entire legal defense for an appeal: COM v. McDuffie, Cp-51-Cr-01010953/0952-2001." (*Id.* at 13.)  That reference corresponds with two criminal proceedings in the Court of Common Pleas in which McDuffie was the defendant: *Commonwealth v. McDuffie*, CP-51-CR-109531-2001 (C.P. Phila.) and *Commonwealth v. McDuffie*, CP-51-CR-0109521-2001 (C.P. Phila.).  The dockets for those cases reflect that on July 26, 2017, McDuffie appealed from an order denying his post-conviction petition.  He was granted an extension of time to file a brief and then filed briefs on March 26, 2018, April 16, 2018, and July 18, 2018.  *See Commonwealth v. McDuffie*, 2695 EDA 2017 (Pa. Super. Ct.)  The Pennsylvania Superior Court considered and rejected McDuffie's arguments on the merits and affirmed the denial of his petition.  *See*

*Commonwealth v. McDuffie*, No. 2695 EDA 2017, 2018 WL 5306713, at *5 (Pa. Super. Ct. Oct. 26, 2018) ("In sum, none of the ineffectiveness claims raised by McDuffie entitles him to relief. We therefore affirm the PCRA Courts order denying his amended PCRA petition.").

Based on the loss of his property and the response to grievances related to his property, McDuffie asserts constitutional claims for violation of his due process rights under the Fourteenth Amendment, violation of his right to access the court under the First Amendment, and deliberate indifference, presumably under the Eighth Amendment. (ECF No. 2 at 7-13.) McDuffie seeks damages.

## II. STANDARD OF REVIEW

The Court grants McDuffie leave to proceed *in forma pauperis* because it appears that he is incapable of paying the fees to commence this civil action.[3] Accordingly, 28 U.S.C. § 1915(e)(2)(B)(ii) applies, which requires the Court to dismiss the Complaint if it fails to state a claim. Whether a complaint fails to state a claim under § 1915(e)(2)(B)(ii) is governed by the same standard applicable to motions to dismiss under Federal Rule of Civil Procedure 12(b)(6), *see Tourscher v. McCullough*, 184 F.3d 236, 240 (3d Cir. 1999), which requires the Court to determine whether the complaint contains "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quotations omitted). Conclusory allegations do not suffice. *Id.* As McDuffie is proceeding *pro se*, the Court construes his allegations liberally. *Higgs v. Att'y Gen.*, 655 F.3d 333, 339 (3d Cir. 2011).

---

[3] However, as McDuffie is a prisoner, he will be obligated to pay the filing fee in installments in accordance with the Prison Litigation Reform Act. *See* 28 U.S.C. § 1915(b).

## III. DISCUSSION

"To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." *West v. Atkins*, 487 U.S. 42, 48 (1988). For the following reasons, McDuffie has failed to allege a plausible constitutional violation.

### A. Official Capacity Claims

McDuffie is suing the Defendants, all of whom are employees of the Pennsylvania Department of Corrections, in their official and individual capacities. The Eleventh Amendment bars suits against a state and its agencies in federal court that seek monetary damages. *See Pennhurst State Sch. And Hosp. v. Halderman*, 465 U.S. 89, 99-100 (1984); *A.W. v. Jersey City Public Schs.*, 341 F.3d 234, 238 (3d Cir. 2003). "Because the Commonwealth of Pennsylvania's Department of Corrections is a part of the executive department of the Commonwealth, it shares in the Commonwealth's Eleventh Amendment immunity." *Lavia v. Pa. Dep't of Corr.*, 224 F.3d 190, 195 (3d Cir. 2000). Suits against state officials acting in their official capacities are really suits against the employing government agency, and as such, are also barred by the Eleventh Amendment. *A.W.*, 341 F.3d at 238; *see also Hafer v. Melo*, 502 U.S. 21, 25 (1991); *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 70-71 (1989). As the Commonwealth has not waived its Eleventh Amendment immunity for lawsuits filed in federal court, *see* 42 Pa. Cons. Stat. § 8521-22, its officials sued in their official capacities are immune from suits filed in federal court. Accordingly, the Court will dismiss McDuffie's official capacity claims against the Defendants with prejudice because they are essentially claims against the Department of Corrections that are barred by the Eleventh Amendment. The Court will address McDuffie's claims against the Defendants in their individual capacities below.

## B. Due Process Claims

McDuffie alleges that his due process rights were violated when the Defendants lost his property and failed to provide him a meaningful remedy to compensate him for that lost property through the grievance process. Specifically, McDuffie alleges that the Defendants owed him a legal duty to safeguard and properly inventory his property, and that the property was lost "due to negligence." (ECF No. 2 at 2 & 7-8.) However, negligence is not actionable under § 1983 because "the Due Process Clause is simply not implicated by a *negligent* act of an official causing unintended loss of or injury to life, liberty, or property." *Daniels v. Williams,* 474 U.S. 327, 328 (1986). Even if the loss of property was intentional, which McDuffie does not allege, and the grievance process inadequate, Pennsylvania law provides McDuffie with an adequate post-deprivation remedy. *See Hernandez v. Corr. Emergency Response Team*, 771 F. App'x 143, 145 (3d Cir. 2019) (per curiam) ("Even if the prison grievance procedures could be considered constitutionally inadequate, Pennsylvania's state tort law would provide an adequate remedy."); *Spencer v. Bush*, 543 F. App'x 209, 213 (3d Cir. 2013) ("'[A]n unauthorized intentional deprivation of property by a state employee does not constitute a violation of the procedural requirements of the Due Process Clause of the Fourteenth Amendment if a meaningful postdeprivation remedy for the loss is available.'" (quoting *Hudson v. Palmer*, 468 U.S. 517, 533 (1984))); *Shakur v. Coelho*, 421 F. App'x 132, 135 (3d Cir. 2011) (per curiam) (explaining that the Pennsylvania Tort Claims Act provides an adequate remedy for a willful deprivation of property). Accordingly, McDuffie cannot state a due process claim based on the loss of his property.

### C. Denial of Access to the Courts

McDuffie also claims that he was denied access to the courts based on the loss of his legal property. "Under the First and Fourteenth Amendments, prisoners retain a right of access to the courts." *Monroe v. Beard*, 536 F.3d 198, 205 (3d Cir. 2008). "Where prisoners assert that defendants' actions have inhibited their opportunity to present a past legal claim, they must show (1) that they suffered an 'actual injury'—that they lost a chance to pursue a 'nonfrivolous' or 'arguable' underlying claim; and (2) that they have no other 'remedy that may be awarded as recompense' for the lost claim other than in the present denial of access suit." *Id.* (quoting *Christopher v. Harbury*, 536 U.S. 403, 415 (2002)). "[T]he underlying cause of action, . . . is an element that must be described in the complaint." *Christopher*, 536 U.S. at 415.

McDuffie has not stated a plausible claim for denial of access to the courts. Initially, negligent conduct that affects access to the courts does not violate the constitution. *See Strausbaugh v. Greentree Servicing LLC*, No. 19-1304, 2021 WL 2103602, at *2 (3d Cir. May 25, 2021) (per curiam) (affirming dismissal where plaintiff failed to allege an "intentional effort to deprive [him] of his right to access the courts" and citing cases); *Pressley v. Huber*, 562 F. App'x 67, 71 (3d Cir. 2014) (per curiam) ("No constitutional violation occurs when a prisoner's access to the courts is impeded by mere negligence."). In any event, although McDuffie generally alleges that the loss of his legal property adversely impacted his ability to challenge his sentence on appeal and to meet deadlines, he has not specifically described a non-frivolous challenge to his conviction or sentence that he was unable to pursue due to the loss of his property. Furthermore, the public record reflects that McDuffie filed three briefs in the Pennsylvania Superior Court and the court decided his appeal on the merits, so it is not clear what aspect of his appeal was lost. As McDuffie has not plausibly alleged that the Defendants intentionally prevented him from pursuing a non-

frivolous challenge to his conviction or sentence in connection with the loss of his legal property, he has not stated a claim for denial of access to the courts. *See Presbury v. Wetzel,* 789 F. App'x 294, 295 (3d Cir. 2020) (per curiam) (affirming the dismissal of access to courts claim based on loss of plaintiff's legal property where plaintiff "did not allege any facts about the merits of his underlying claim" and did not "demonstrate that the loss of his legal materials, while unfortunate and inconvenient, has rendered him unable to seek the District Attorney's review"); *Bowens v. Matthews*, No. 18-3032, 2019 WL 1461537, at *2 (3d Cir. Apr. 2, 2019) ("To the extent that Bowens described his PCRA claim at all, he did not describe it well enough to show that it is 'nonfrivolous' or 'arguable.'"); *Monroe*, 536 F.3d at 206 (plaintiffs' allegations that "defendants confiscated their legal materials" and that "they lost the opportunity to pursue attacks of their convictions and civil rights claims" without "specify[ing] facts demonstrating that the claims were nonfrivolous" did not state a claim).

### D. Eighth Amendment Claims

The loss of McDuffie's property also does not provide a basis for a claim under the Eighth Amendment. Conditions of confinement violate the Eighth Amendment's prohibition on cruel and unusual punishment if they satisfy two criteria. First, the conditions "must be, objectively, sufficiently serious" such that a "prison official's act or omission . . . result[s] in the denial of the minimal civilized measure of life's necessities." *Farmer v. Brennan*, 511 U.S. 825, 834 (1994) (citations and internal quotation marks omitted). Second, the official responsible for the challenged conditions must exhibit a "sufficiently culpable state of mind," which "[i]n prison-conditions cases . . . is one of deliberate indifference to inmate health or safety." *Id.* The destruction of property does not equate to a sufficiently serious deprivation that would give rise to a claim under the Eighth Amendment. *See Payne v. Duncan*, Civ. A. No. 15-1010, 2017 WL

542032, at *9 (M.D. Pa. Feb. 9, 2017) ("Plaintiff's claim for destruction of property under the Eighth Amendment does not constitute a deprivation of life's necessities."), *aff'd*, 692 F. App'x 680 (3d Cir. 2017); *Dean v. Folino*, Civ. A. No. 11-525, 2011 WL 4527352, at *3 (W.D. Pa. Aug. 22, 2011) (allegations regarding destruction of property did not state Eighth Amendment claim), *report and recommendation adopted*, No. CIV.A. 11-525, 2011 WL 4502869 (W.D. Pa. Sept. 28, 2011). Accordingly, the Court will dismiss McDuffie's Eighth Amendment claims.

## IV. CONCLUSION

For the foregoing reasons, the Court will dismiss McDuffie's Complaint for failure to state a claim, pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii). Although it is unfortunate that McDuffie's property was lost, the negligent loss of personal and property does not violate an inmate's constitutional rights or deny an inmate access to the courts, particularly when no nonfrivolous challenge was lost. Accordingly, the Court concludes that amendment would be futile here. The Motion to Appoint Counsel is denied. *See Tabron v. Grace*, 6 F.3d 147, 155 (3d Cir. 1993) (in determining whether appointment of counsel is appropriate, the Court should first determine whether plaintiff's lawsuit has a legal basis). An appropriate Order follows.